UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BELL MICROPRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-082 CAN |
| | ) | |
| MARKET DEVELOPMENT SPECIALISTS, INC., *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

**I.   INTRODUCTION**

As recounted in a previous opinion and order, the Defendant Market Development Specialist, Inc. (Market) ordered and received products from the Plaintiff, Bell Microproducts, Inc. (Bell), for which it did not pay. Bell, addressing Market's increasing debt, sought and obtained guarantees for the debt from the Defendants John Levy (Levy) and Romaine Inc. (Romaine). Unfortunately, Market's debt to Bell increased and Bell's attempts to receive payment for its products failed. As a result, Bell filed suit on January 31, 2006, against Market, Levy, and Romaine, seeking to collect against Market and to enforce the guarantees of Romaine and Levy.

On May 14, 2008, this Court granted, in part, Bell's Motion for Summary Judgment against Market and Romaine. Specifically, this Court found that both Market and Romaine were liable for the debt. However, because Market had alleged in a counterclaim various warranty theories against Market, this Court could not assess the amount of the damages. The issues of Market's counterclaim against Bell, as well as the viability of Levy's personal guarantee

concerning the adequacy of consideration and an equitable defense of economic duress, were left for the jury to determine at trial.

On October 14, 2008, at the final pretrial conference, all parties waived a jury trial; and, on October 20, 2008, the day before the bench trial began, all parties joined in a stipulation to dismiss Market's counterclaim. Without Market's counterclaim, and without objection, the Court entered judgment against Market in the amount of $11,476,352.25 and against Romaine in the amount of $12,501,669.75.[1]

Because there is no dispute that Levy agreed to and signed a personal guaranty concerning the debt of Market and Romaine, the only issues that remained for the Court to decide were whether there was adequate consideration for Levy's personal guarantee and, if so, whether the personal guarantee is voidable due to economic duress under California Law.[2] This opinion now announces and explains the Court's decision.

## II. PROCEDURE

On June 7, 2006, the parties consented to the resolution of all matters in this case by the undersigned. See Doc. No. 34. Accordingly, this Court may rule upon these matters pursuant to the parties consent and 28 U.S.C. § 636(c)(1). On October 21, 2008, the bench trial began and on October 22, 2008, both parties rested. On November 17, 2008 both Bell and Levy filed their post trial briefs. Pursuant to Fed. R. Civ. P. 52(a), the Court now enters its findings of fact and conclusions of law.

---

[1] The difference in the amount is due to the fact that the Romaine guarantee contained a higher interest rate allowable under California law.

[2] The parties stipulated and the guarantee states that California law applies to the terms and construction of the personal guarantee.

2

**III. FACTS**

Bell is a computer products distributor which distributes computer products to various entities. Market is an Indiana Corporation in which John Levy has an interest. Wintergreen Systems is a d/b/a of Market. Romaine, Inc., was formed in 1977 and engaged in computer manufacturing. Market, Wintergreen Systems, Retrobytes and Romaine, Inc., are collectively hereinafter referred to as "The Levy Companies."

Donn Lindstrom ("Lindstrom") testified that in 2003-2004, he was the territory manager for Bell and was in charge of sales for Bell in the central part of the United States. In the fourth quarter of 2003, Lindstrom contacted Market to discuss if Market and Bell could do business together. Shortly after Lindstrom's initial visit, Bell set up an initial line of credit with Market of $50,000.00 which was soon thereafter increased to $250,000.00. David Uranga ("Uranga") was the Director of Credit for Bell. He testified that by June 1, 2004, Bell increased the Levy Companies' credit line to $500,000.00. By November of 2004, the credit had been increased to $4 million and ultimately it grew to $9 million.

As the credit limits increased, Bell began to seek greater security for the debt from Levy and his companies. Uranga testified that in June 2004, Bell entered into a "lockbox" agreement with Romaine. In November, Bell again sought additional security for the increasing debt. And, while there is some confusion as to the exact date, it is clear that, in November, Levy signed a personal guarantee for the debts of his companies, Market and Romaine. Unfortunately, Market and Romaine failed to pay for the products received from Bell, and Levy failed to honor his personal guarantee. This lawsuit ensued.

Levy now contends he should be relieved of his personal liability for the debts of Market and Romaine because there was inadequate consideration to support his personal guarantee and

3

alternatively, if there was adequate consideration, that the equitable defense of economic duress applies. This Court disagrees and now explains why.

IV. **ANALYSIS**

A. Burden of Proof

As with all jurisdictions, California law requires that contracts must be supported by sufficient consideration. Cal. Civ. Code § 1550 (2008). A written instrument, such as a guaranty, is presumptive evidence of consideration. Cal. Civ. Code § 1614 (2008). The burden of showing a lack of consideration lies with the party seeking to invalidate or avoid it. Cal. Civ. Code § 1615 (2008). Despite the clear language of these statutory provisions, there is a split of authority as to the effect of sections 1614 and 1615 on the burden of proof.

Levy has pointed to *Rancho Santa Fe Pharm. v. Seyfert*, 268 Cal. Rptr. 505 (Cal. Ct. App. 1990), for the proposition that section 1615 affects the burden of production and *not* the burden of proof. This Court disagrees. *Rancho* is in stark contrast to the majority of California cases that discuss the issue and that have found the opposite. *See Kester v. Reynolds*, 176 Cal. App. 2d 36 (Cal. Ct. App. 1959) (It is unnecessary for plaintiff to allege or prove consideration, burden being on defendant to prove lack of consideration); *Atlas Mixed Mortar Co., v. Stein*, 13 P.2d 766 (Cal. Ct. App. 1941) (A presumption of consideration arises from the writing itself, and the burden of proof is on the party seeking to invalidate the instrument for want of consideration.); *see also Kott v. Hilton*, 114 P.2d 666 (Cal. Ct. App. 1941) *Pomper v. Behnke*, 276 P. 122 (Cal. Ct. App. 1929); *Barry v. Sutter*, 146 P. 527 (Cal. Ct. App. 1914)

In light of this authority, this Court concludes that under California law, Levy has the burden of coming forth with evidence that he did not receive consideration in exchange for his

guaranty to overcome the presumption of section 1614. And as will be explained below, after consideration of the evidence at trial, it is clear that Levy has failed to meet his burden.

B.  Adequacy of Consideration

Levy claims that his personal guaranty lacks consideration to support debts incurred after signing. Under California law, if the express language of a guaranty indicates it applies to former and current obligations then the guaranty will extend to the earlier obligations so long as there is consideration at the time the guaranty is made. *Beverly Hills Nat. Bank v. Glynn*, 73 Cal. Rptr. 808, 813 (Cal. Ct. App. 1968); *see also Kafka v. Bellevue Corp.,* 999 F.2d 1117, 1123 (7th Cir. 1993) (applying California law). The Levy Guaranty states:

> [Levy] hereby unconditionally guarantees the payment when due of all of [Market's] indebtedness now or hereafter owed to Bell….The term "indebtedness" shall include every payment obligation which [Market] has or may have to Bell; regardless of the form thereof and whenever due.

This language clearly indicates that future obligations are contemplated and will be incurred as well as previous obligations.

Under Cal. Civ. Code § 1605, if Bell conferred *any* benefit to Levy in exchange for the guaranty then it provided good consideration. Or stated differently, any consideration, however slight, will support the most onerous obligation. *Taylor v. Taylor*, 66 Cal. Ct. App.2d 390, 398 (Cal. Ct. App. 1944).

At trial, Levy did not present any evidence to rebut the presumption of section 1614. As a result, Bell could have rested on this unrebutted presumption alone. However, Bell's case is stronger than the unrebutted presumption.

The uncontradicted evidence presented at trial established that in early November 2004, Levy's companies owed Bell between $4 million and $4.5 million. On November 9, 2004, Bell

5

received notice of 9 or more Non-Sufficient Fund (NSF) checks. At that time, Uranga, in his capacity as Director of Credit, reviewed Mr. Levy's companies' account with Bell to determine whether or not additional security would be required. After reviewing the accounts, Uranga decided that Bell would not continue to do business with Levy and his companies unless the checks were made good and Bell was given more security. Bell requested Levy's personal guarantee to secure the increase in Levy's companies' line of credit. Thereafter, between the execution of the personal guarantee on November 11, 2004, and the termination of the parties' relationship in January 2006, the indebtedness to Bell by Levy's companies grew to in excess of $9 million.

The additional extensions of credit by Bell in exchange for Levy's personal guaranty is clear evidence of an additional benefit to Levy and his companies. As *Patek & Co. v. Vineberg*, makes clear, Levy, as an officer and stockholder of Market, derived a benefit from Bell's agreement to extend additional credit and continue doing business with Market. *Patek,* 210 Cal. Ct. App.2d 20, 23 (Cap. Ct. App. 1962) This benefit, the extension of credit to Levy's companies, is adequate consideration for the personal guaranty. Levy's affirmative defense of lack of consideration, must therefore, fail.

    C.    <u>Economic Duress</u>

It is undisputed that Levy bore the burden of proving, by a preponderance of the evidence at trial, his affirmative defense of economic duress. Under California law, for Levy to prevail on his defense that he executed his personal guaranty while under economic duress, he must show that: (1) Bell committed a wrongful act which caused Levy to sign the guaranty; and (2) the wrongful act was sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. *Perez v. Uline, Inc.* 68 Cal. Rptr.

6

3d 872, 876 (Cal. Ct. App. 2007). Examples of "wrongful acts" include "the assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment." *Rich & Whilock, Inc. v. Ashton Development, Inc.*, 157 Cal. Ct. App.3d 1154, 1158 (Cal. Ct. App. 1984).

As to the second prong, economic duress cannot be established if a reasonable alternative was available and there was no compelling necessity to submit to the coercive demands. *Crosstalk Prods. v. Jacobson*, 65 Cal. Ct. App.4th 631, 623 (Cal. Ct. App. 1998). Whether the party asserting economic duress had a reasonable alternative is determined by examining whether a reasonably prudent person would follow the alternative course, or whether a reasonably prudent person would submit to the pressure and sign the contract. *Id.*

Despite having the benefit of the trial as well as Levy's post trial brief, it is still not clear to the court what exactly Levy claims to have been the wrongful act that caused him to sign the personal guaranty. He appears to argue that Bell, through the actions of Lindstrom and Uranga, wrongfully induced him to contract with others to sell products that Bell then failed to deliver and that Bell wrongfully withheld delivery of products that Levy and his companies had ordered until he signed the personal guaranty. If the Court is correct in its view that these are the wrongful acts of which Levy complains, then his affirmative defense of economic duress fails, because the Court now concludes that neither of these acts, individually or collectively, is sufficient under California law to constitute a "wrongful act."[3]

With respect to Lindstrom's alleged conduct, the facts are not as clear as Levy claims. While Levy testified at some length regarding Lindstrom's conduct, Lindstrom did not admit to

---

[3]If there are other wrongful acts that Levy alleges they are vague and undeveloped and, as such, are waived. See Boyd v. Owen, 481 F.3d 520, 524-25 (7th Cir. 2007); Gates v. Towery, 507 F. Supp. 2d 904, 924 (N.D. Ill. 2007) ("[A]ny arguments that are . . . underdeveloped are deemed waived.").

7

such conduct and frequently could not recall the transactions or details of events as Levy testified. The absence of any corroboration of Levy's testimony leaves a thin record, that is insufficient to carry his burden of proof.

With regard to Uranga's conduct and the allegation that Bell wrongfully withheld previously ordered materials, this allegation also is insufficient to constitute a wrongful act. The Court is persuaded that Bell's conduct was entirely reasonable and consistent with a creditor seeking to protect itself from a debtor who was increasing the debt and demonstrating an unwillingness or inability to pay for goods ordered. The presentation of NSF checks to Bell by Levy's companies could not be stronger evidence of Levy's financial difficulties.

Having now concluded that Levy has failed to carry his burden that Bell committed a "wrongful act," it is not necessary to reach the second prong of whether there were reasonable alternatives. However, even if Levy had shown "wrongful acts," he failed to show that there were no reasonable alternatives available to him.

The equitable defense of economic duress sets a high burden of proof, and that high burden is as it should be. Equitable defenses are extraordinary. Levy has not carried his burden to show he is entitled to this defense.

## V. CONCLUSION

Because the Court has now concluded that there was adequate consideration for Levy's personal guarantee and Levy has failed to establish that he signed the personal guarantee under economic duress, the Court now **FINDS FOR** Bell and **AGAINST** Levy. And, because Levy guaranteed the debt of Market and this Court has previously entered judgment for Bell against Market in the amount of $11,476,352.25, the clerk is **ORDERED** to enter judgment for Bell and against Levy in the amount of $11,476,352.25. Plaintiff is awarded its costs.

**SO ORDERED.**

Dated this 9th day of December, 2008.

                                                       S/Christopher A. Nuechterlein
                                                       Christopher A. Nuechterlein
                                                       United States Magistrate Judge